IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE HUFF AND JON SEATON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CIVIL NO. 12-596-MJR |
| | ) |
| CITY OF COLLINSVILLE AND | ) |
| COLLINSVILLE POLICE OFFICER | ) |
| MICHAEL REICHERT, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

## I. BACKGROUND

This matter is before the Court on Defendant City of Collinsville and Defendant Michael Reichert's (collectively "Defendants") Motion for Summary Judgment (Doc. 13) and Motion for Summary Judgment Based on Qualified Immunity (Doc. 25). The case stems from an automobile stop that police officer Michael Reichert made of the Plaintiffs Terrance Huff ("Huff") and Jon Seaton ("Seaton"), which resulted in the issuance of a warning. Defendants seek summary judgment on all of the Plaintiff Huff and Seaton's claims, which include 42 U.S.C. § 1983 claims for unreasonable seizure (Count 1), false arrest (Count 2), unreasonable search of person (Count 3), unreasonable search of vehicle (Count 4), and a *Monell* claim against the City of Collinsville (Count 5). Defendants also seek summary judgment on Plaintiffs' state law tort claim of intentional infliction of emotional distress (Count 6), also claiming *respondeat superior* against City of Collinsville (Count 7) and indemnification

pursuant to 745 ILCS 10/9-102 (Count 8). Defendants also assert a qualified immunity defense in their second Motion for Summary Judgment Based on Qualified Immunity (Doc. 25). The Court has duly considered Defendants' arguments and Plaintiffs' response brief and supplemental response brief. Because a raft of disputed material facts exists, both Defendants' motions for summary judgment (Docs. 13, 25) are **DENIED**.

## II. STANDARD OF REVIEW

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted).

## III. STATEMENT OF FACTS

Plaintiffs were returning home to Ohio after attending a Star Trek convention in St. Louis, Missouri on December 4, 2011, which happened to be Huff's 40th birthday. Huff was driving the vehicle and Seaton was riding in the passenger seat. At approximately 8:10 a.m., Plaintiffs were stopped by Reichert on Interstate 55-70 in Collinsville, Illinois. Reichert walked to the passenger's side of Huff's vehicle and asked Huff for his driver's license, insurance and registration. Huff provided Reichert with all three documents. Reichert asked Huff if the address on his driver's license

was current and Huff explained that the address on his driver's license is his mother's address, and his current address is 1158 Susan Drive, Hamilton, Ohio. Reichert then asked Huff to exit from his vehicle and step to the back while Seaton remained seated in the passenger seat. Reichert explained why he pulled Plaintiffs over, stating that Huff crossed half way over the center line in front of a truck without using a turn signal and then moved back into his own lane. Huff stated that he had problems with the lid on his drink cup. Reichert asked about Huff's criminal history, to which Huff replied that he had no outstanding warrants, but was arrested about 20 years ago. Reichert called police dispatch, which related Huff to have charges of marijuana-based plant cultivation from 2001 and battery with injury. There was no criminal history for Seaton. At some point during this encounter, Reichert requested a backup officer who appeared on the scene. Reichert told Plaintiffs that he was letting them go with a warning and shook Huff's hand.

Reichert then requested to speak to Seaton as he believed Seaton to be acting nervous and apprehensive. Reichert mentioned to Huff that the Interstate Highway had been used by motorists to carry drugs and guns, and asked Huff if he possessed any of those items in his vehicle. Huff denied that there were any drugs, guns or large amounts of U.S. currency in his vehicle. Reichert then asked Huff if he had any objection to Reichert searching the vehicle, to which Huff replied that he would "just like to go on [his] way." Reichert then told Huff that he was concerned over Seaton's demeanor and wanted to walk his drug-sniffing canine around the car. Huff replied "that's fine," but then stated that he knew he did not swerve and believed he was being profiled by Reichert.

Reichert then asked Huff for his consent to search his vehicle to which Huff stated that he felt that he had no choice but to consent. Reichert replied that he was merely going to have the canine sniff around the car to see if he would alert. Huff told Reichert that he could use the canine but could not search the vehicle. Next, Reichert conducted a pat down search of Huff and Seaton. He then

brought the canine out and they circled the car together. When Reichert and the canine got to the front of the vehicle, Reichert repeatedly said "show me where it's at" and the canine barked. Reichert told Huff that the canine alerted by scratching at the front of the vehicle and then barking. Reichert stated that the wind was blowing toward the front of Huff's vehicle. Reichert then told Huff that he was going to search his car, and Huff responded "do what you gotta do." Huff stated that, previously, a few individuals known to smoke marijuana have ridden in his vehicle, but these individuals had never smoked while in Huff's vehicle. After the search of the vehicle, Reichert told Huff that there was marijuana "shake" in his car that needed to be vacuumed out. After approximately fifty minutes later, Reichert told Plaintiffs that they were free to leave.

## IV.  DISCUSSION

Plaintiffs Huff and Seaton brought this action pursuant to 42 U.S.C. § 1983 alleging that their civil rights were violated when Reichert and the City of Collinsville unreasonably searched and seized Plaintiffs' persons, committed false arrest, and searched Huff's vehicle without probable cause. Plaintiffs also bring a state law tort claim against Defendants for intentional infliction of emotional distress.

### A.  Unreasonable Seizure

Under the Fourth Amendment, officers may stop a car on reasonable suspicion that the driver has violated the law. *See United States v. Riley*, 493 F.3d 803, 808-09 (7th Cir. 2007). "Reasonable suspicion is more than a hunch but less than probable cause and 'considerably less than a preponderance of the evidence.'" *U.S. v. Bueno*, 703 F.3d 1053, 1062 (7th Cir. 2013) (citing *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008). Reasonableness "calls for an objective inquiry into all of the circumstances known to the officer at the time" that he detained the defendant. *United States v. Snow*, 656 F.3d 498, 500 (7th Cir. 2011). The constitutional reasonableness of a traffic stop does not

depend on the subjective motivations of the individual officer involved. *See Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (citing *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "Instead, the Fourth Amendment's focus on reasonableness dictates an objective analysis, under which, 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action." *Id.*

The Fourth Amendment allows pretextual traffic stops so long as they are based upon an observed violation of a traffic law. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d (1996). Here, Plaintiffs argue that Reichert's decision to pull them over was pretextual and not based on any observed violation of traffic law. More specifically, Plaintiffs argue that Huff never crossed the center line while driving on the day in question. In response, Defendants cite to a Seventh Circuit case, *Valance v. Wisel*, 110 F.3d 1269 (7th Cir. 1997), for the proposition that Plaintiffs' allegations are insufficient to create a factual dispute on summary judgment.

In *Valance*, an officer observed the plaintiff's automobile cross the center line twice while navigating an "S" curve and so suspected the driver of being under the influence. *Valance*, 110 F.3d at 1272. The court held that the plaintiff's deposition testimony stating that he did not believe he crossed the center line at the "S" curve was less than definitive and somewhat inconsistent with statements he made at the time he was stopped by the officer. *Id.* at 1276. Thus, the court found that a reasonable jury could only determine that the plaintiff really did not know whether he crossed the center line or not and this was not sufficient for his claim of a pretextual traffic stop. *Id.*

In the present case, Reichert claims that he saw Huff cross half way over his driving lane in front of a truck without using a turn signal and then move back into his own lane. Defendants assert in their motion that Reichert told Huff of this and Huff "explained his driving in that he had a problem

with his brake, problems with a lid on his cup, and that his cup collapsed." (Doc. 21). If unrebutted, this evidence would establish the reasonable suspicion necessary for a traffic stop. *See United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (officer had probable cause to stop vehicle that had been straddling lanes and had failed to signal before turning).

Huff, however, alleges in his complaint that he never crossed the center line. (*See* Doc. 2). As the court made clear in *Valance*, this allegation in a plaintiff's complaint, without more, is insufficient to create a factual dispute on summary judgment. *See Valance*, 110 F.3d at 1275 ("such an allegation is insufficient to create a factual dispute on summary judgment once the moving parties have come forward with evidence indicating that they are entitled to judgment as a matter of law."). Thus, Huff must come forward with evidence supporting the complaint's assertion, which he does. FED.R.CIV.P. 56(e); *Valance,* 110 F.3d at 1275.

To support this assertion, Huff cites to the video footage taken of the traffic stop by a camera that was located on Reichert's squad car. The Court has watched this video, and finds that on the day of the occurrence Huff specifically denied swerving into the next lane. Specifically, Huff stated that "[y]ou pulled me over for swerving, and I know that I did not swerve." (Doc. 22-4). He went on to indicate his belief that he was being "profiled." (Doc. 22-4). This assertion is also supported by Huff's sworn affidavit which states that he did not swerve as claimed by Reichert. (Doc. 22-3). Further, Huff adamantly testified in his deposition that he "did not break [his] lane of travel." (Doc. 35-2).

Although Defendants urge the Court to treat Huff's statement indicating that he had an issue with his cup as an admission that Huff swerved, this statement is called into question by Huff's statement -made a matter of minutes later- when he said that he knew he did not swerve. The Court is satisfied that the Huff's statements made during the traffic stop as evidenced by the video, as well as

those alleged in his complaint, affidavit and deposition, create a genuine issue of material fact as to whether Reichert actually perceived a traffic violation. *See Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006) ("A court's role [on summary judgment] is not to evaluate the weight of the evidence, to judge the credibility of the witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable [material] fact."). As such, Defendants' Motion for Summary Judgment as to the unreasonable seizure claim is **DENIED**.

### B. False Arrest

Defendants also assert that they are entitled to summary judgment on Plaintiffs' false arrest claim, arguing that probable cause existed for the arrest based on the totality of the circumstances. In their Complaint, Plaintiffs claim that they were unlawfully arrested without probable cause under the Fourth Amendment when they were not free to leave after Reichert issued Huff a traffic warning.

"A seizure occurs when a reasonable person . . . would believe that his liberty has been restrained." *U.S. v. Lewis*, 608 F.3d 996, 1000 (7th Cir. 2010). The Fourth Amendment permits police officers to stop and temporarily detain a person for questioning and for a limited investigation if the police have reasonable suspicion that the person has committed or is about to commit a crime. *United States v. LePage*, 477 F.3d 485, 487 (7th Cir. 2007). This type of seizure arising from a traffic stop is governed by the principles of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An arrest, on the other hand, requires probable cause. *See United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995). "If probable cause to arrest is found to exist, it 'is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest.'" *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) *(quoting Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)). "Probable cause exists if an officer reasonably believes, in light of the facts known to [him] at the time, that a suspect had committed or was committing an offense." *Jackson*, 627 F.3d at 638 (quoting *United States v. Reed*, 443

F.3d 600, 603 (7th Cir. 2006)). "A probable cause determination 'relies on the common-sense judgment of the officers based on the totality of the circumstances.'" *Id.*

Defendants claim that there was probable cause for the arrest based on the totality of the circumstances. In making this assertion, Defendants rely on the following facts: Plaintiffs' vehicle crossed the center line without using a turn signal; Seaton appeared nervous and apprehensive to Reichert; Huff stated his address to be something different than that listed on his driver's license; Huff had a temporary insurance card; Huff's vehicle had out of state license plates; the portion of the Interstate 55/70 at which they were pulled over on was commonly used for drug and gun trafficking; a routine criminal background check revealed Huff to have charges of marijuana cultivation (California), battery with an injury and driving under the influence; Huff only denied "personal knowledge" of any drugs or guns being in his vehicle; and it was only later that Huff flatly denied that there were drugs, money or weapons in his car at the time he accused Reichert of profiling him. (*See* Doc. 13).

With respect to the first fact that Plaintiffs' vehicle crossed the center line without using a turn signal, the Court has already ruled this to be a disputed material fact. Another factor which figured prominently in Defendants' probable cause argument is Reichert's subjective assessment of Seaton as acting extremely nervous during the traffic stop. Plaintiffs dispute this fact as well. The Court is unable to tell from the video whether Seaton appeared "nervous and apprehensive," as he is sitting in the car and obstructed from the camera's view. Moreover, the Court recognizes that it is certainly not uncommon for most citizens- whether innocent or guilty- to exhibit signs of nervousness when confronted by a law enforcement officer. The Court also recognizes that while this factor is relevant to the analysis when viewed as a whole, it is of limited significance in determining probable cause on its own. *See U.S. v. Williams,* 76 Fed. Appx. 728, 730 (7th Cir. 2003); *see also U.S. v. Tinnie*, 629 F.3d 749,

757 (7th Cir. 2011) (Hamilton, J., dissenting) (citing *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010). Regardless, it is apparent from the record that there is a genuine issue of fact as to Seaton's nervousness. Because two of the facts relied upon by Defendants for their probable cause analysis are in dispute, it is apparent that genuine issues of material fact exist as to the false arrest claim. The Court is not convinced that the remaining facts emphasized by Defendants support a finding of probable cause on their own. As such, Defendants' Motion for Summary Judgment as to Plaintiffs' false arrest claim is **DENIED**.

### C. Unlawful Search of Person

Defendants also seek summary judgment on Plaintiffs' unlawful search of person claim, asserting that Reichert possessed the reasonable suspicion necessary for a pat down search.

Officers who conduct routine traffic stops may perform a pat down of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 332, 129 S.Ct. 781, 787 (2009). "The standard for a pat-down search is less demanding than probable cause and requires only 'a minimal level of objective justification for making the stop.'" *U.S. v. Kenerson*, 585 F.3d 389, 392 (7th Cir . 2009) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). "Officers are entitled to consider practical considerations of everyday life, as well as the prevalence of criminal activity in a particular location." *Kenerson*, 585 F.3d at 392. Courts determine reasonable suspicion based on a totality of circumstances rather than isolated events. *Id.*

Defendants assert that the same combination of facts mentioned above that allegedly justify probable cause for the arrest of Plaintiffs also justify a reasonable suspicion that Plaintiffs were armed and dangerous. As the Court has previously mentioned, two of these factors, one of them being the sole justification for the initial traffic stop, are in dispute. Further, the Court is not convinced that the

remaining factors taken together are sufficient to support a finding of reasonable suspicion that Plaintiffs were armed and dangerous.

Defendants further assert that Huff consented to the pat down search. This argument is unavailing. If the *Terry* stop itself is unlawful, then any subsequent consent obtained would be invalid. *See U.S. v. Drayton*, 536 U.S. 194, 208, 122 S.Ct. 2105, 2115 (2002) ("any consent to search was plainly invalid as a product of the illegal seizure"); *see also Florida v. Royer*, 460 U.S. 491, 507-508, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) ("[T]he consent was tainted by the illegality and . . . ineffective to justify the search"). Because there is a genuine issue of material fact regarding the lawfulness of the initial traffic stop, the fact that Huff might have consented does not warrant a granting of summary judgment on this issue. As such, Defendants' Motion for Summary Judgment as to Plaintiffs' claim of unlawful search of person is also **DENIED**.

### D. Unreasonable Search of Vehicle

Defendants also seek summary judgment on Plaintiffs' unlawful search of vehicle claim asserting that the drug sniffing canine's positive alert gave Reichert the probable cause necessary to search the car. The use of a drug sniffing dog during a traffic stop does not constitute a search. *See United States v. Taylor*, 596 F.3d 373, 377 (7th Cir. 2010). Further, a canine's alert can elevate a reasonable suspicion to probable cause. *See United States v. Ganser*, 315 F.3d 839, 844 (7th Cir. 2003). Here, Plaintiffs' question the validity of the alert itself. Specifically, Plaintiffs assert that the only evidence the Court has of the alert is Reichert's representation of the event, as the alleged alert took place at the front of Plaintiffs' car, which was obscured from the police camera. Plaintiffs question many facts surrounding the dog alert, such as: the accuracy of the dog; the training of the dog; the extent to which the dog was manipulated to respond; and whether an alert actually occurred at all. Since the filing of Plaintiffs first response brief, Plaintiffs have obtained some data regarding the dog's

reliability; however, they claim that there remains various data to be gathered.

As the Supreme Court stated last month in *Florida v. Harris*, "even assuming a dog is generally reliable, circumstances surrounding a particular alert may undermine the case for probable cause- if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Florida v. Harris*, No. 11-817, 2013 WL 598440, at *6 (Feb. 19, 2013). "[A] defendant must have an opportunity to challenge evidence of a drug detection dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* Here, Plaintiffs challenge the reliability of the alert and are entitled to pursue further discovery on this matter. Because there is a genuine issue of material fact regarding the reliability of the particular alert, Defendants' Motion for Summary Judgment as to Plaintiffs' claim for unreasonable search of vehicle is also **DENIED**.

### E. Plaintiff's Counts 5 through 8

Plaintiffs also bring a §1983 *Monell* claim against the City of Collinsville (Count 5), and a state law tort claim of intentional infliction of emotional distress (Count 6), seeking *respondeat superior* against City of Collinsville (Count 7) and indemnification pursuant to 745 ILCS 10/9-102 (Count 8). Because Counts 5 through 8 are dependent upon Counts 1 through 4, as conceded by Defendants, these counts should proceed through discovery as well.

### F. Qualified Immunity as to all Counts

By separate motion (Doc. 25), Defendants argue that they are entitled to qualified immunity with respect to all of Plaintiffs' claims. Pursuant to this defense, "police officers are entitled to qualified immunity for actions taken during a stop or arrest insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (internal quotations omitted). "There is a

two-step sequence for resolving government officials' qualified immunity claims: A court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 223-224, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009). The Court must view disputed facts in the light most favorable to the party opposing the motion. *See Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003). Finally, precedent makes clear that "the doctrine of qualified immunity leaves 'ample room for mistaken judgments' by police officers." *Payne*, 337 F.3d at 776 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.E.2d 271 (1986)). It protects all but the "plainly incompetent [or] those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534 (1991). Qualified immunity protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual. *Belcher v. Norton*, 497 F.3d 742, 749 (7th Cir. 2007).

Defendants' qualified immunity defense fails due to the numerous factual disputed issues regarding each of Plaintiffs' claims. As explained above, the Court finds that there are material issues of fact as to whether Reichert actually observed a traffic offense being committed, whether Reichert witnessed nervous and apprehensive behavior on the part of Seaton, and whether Reichert conducted a proper dog sniff search. These disputed facts go to whether Reichert had probable cause or whether "a reasonable officer could have mistakenly believed probable cause existed." *Humphrey v. Stasak*, 148 F.3d 719, 725 (7th Cir. 1998). Thus, these questions of fact preclude summary judgment not only on Plaintiffs' constitutional claims but also on Defendants' qualified immunity claim. Accordingly, Defendants' Motion for Summary Judgment Based on Qualified Immunity (Doc. 25) is also **DENIED**.

V. **CONCLUSION**

For the reasons stated herein, the Court **DENIES** Defendants' Motion for Summary Judgment (Doc. 13) and **DENIES** Defendants' Motion for Summary Judgment Based on Qualified Immunity (Doc. 25). Accordingly, the Court lifts the discovery stay and directs the parties to contact Magistrate Judge Frazier for a Rule 16 conference regarding a revised scheduling order.

**IT IS SO ORDERED.**

DATED: March 14, 2013

s/ Michael J. Reagan<br>
MICHAEL J. REAGAN<br>
United States District Judge